R. E. LUTHER, Administrator, Appellee, v. M. T. PAARDEKOOPER, Appellant.

**NEGLIGENCE: Acts Constituting—Care in Driving Automobile.** Evidence reviewed, and held to present a jury question as to the negligence of defendant in driving his car, whereby plaintiff's intestate received injuries from which she died. [1]

**TRIAL: Instructions—Unsupported Theories.** Requested instructions on unsupported theories are properly refused. [2]

*Appeal from Dallas District Court.—*J. H. APPLEGATE, Judge.

FEBRUARY 5, 1924.

THIS is an action to recover for the death of plaintiff's in-

testate, caused by her being struck by an automobile driven by defendant. There was a verdict and judgment for plaintiff, and defendant appeals. The facts are stated in the opinion.— *Affirmed.*

*White & Clarke* and *Parsons & Mills,* for appellant.

*D. H. Miller* and *C. W. Bowers,* for appellee.

VERMILION, J.—The appellee, as administrator of the estate of his daughter, Lillian Louise Luther, deceased, brings this action to recover the damages accruing to her estate by reason of her death, caused by her being struck by appellant's automobile.

It appears from the testimony that, between 5:30 and 6 o'clock on the evening of January 14, 1922, the appellee, with the deceased, a child between 8 and 9 years of age, and a younger son, were proceeding eastward upon the public highway between Waukee and Des Moines, in appellee's automobile. At a point about half a mile east of Waukee, where the road ran in practically an east and west direction, appellee stopped the car close to the ditch on the south side of the road, and the deceased got out, and stepped down into the shallow ditch at the roadside. A car driven by one Kelley was following, and, while appellee's car was standing, passed to the left of it, and a short distance beyond, came into collision with the car of appellant, proceeding in the opposite direction. Kelley's car was stopped by the collision, the left rear wheel and fender being damaged. The front axle of appellant's car was bent back, throwing the left front wheel outward, making the car difficult to control. It proceeded diagonally toward where appellee's car was standing, and went into the ditch in front of appellee's car, striking the deceased, and inflicting injuries of which she died. It crossed the ditch, going up a slight bank on the opposite side, and some distance into a plowed field before it stopped. The graded road at this point was 28 or 30 feet wide, and surfaced with gravel. There was a slight snow on the ground, and it had been thawing. Whether the surface of the road was slippery or not is in dispute, but the ground off the road was soft. It was dark, and the lights of all the cars were on and clearly visible.

1. NEGLIGENCE: acts constituting care in driving automobile.

The negligence alleged was: (1) That appellant was driving at a careless and dangerous rate of speed; (2) that he was driving on the wrong side of the road; (3) that he did not have his automobile under control; and (4) that he failed to exercise due care to avoid injury to the deceased.

The case was submitted to the jury upon the theory that, if the collision between appellant's car and that of Kelley was caused by the negligence of appellant in some one or more of the respects charged, and such negligence was the proximate cause of the injury to deceased, or if the collision was not caused by negligence of appellant, but he was thereafter guilty of negligence in respect to control of his car that proximately caused the injury, the plaintiff should recover. No complaint is made in this court of the instructions given.

As to the claim that the verdict is not supported by sufficient evidence, it will suffice to say that the testimony was in conflict as to the speed of both appellant's and Kelley's cars; as to the point where the collision occurred, with respect to the distance in front of appellee's car and with reference to the center of the road; as to appellant's control of his car, both before and after the collision; and as to the distance his car ran after the collision. There was testimony to the effect that appellant was driving between 30 and 40 miles per hour, and that his car was weaving a little before the collision, and that, as it approached Kelley's car, it seemed to come across from the north side of the road in a southwesterly direction; while Kelley's car was on the south side of the road, and traveling at the rate of about 7 miles per hour. There was, also, testimony from which it might have been found that the collision occurred 75 or 80 feet in front of where appellee's car was standing, and that appellant's car ran in the neighborhood of 150 feet after the collision, crossing a ditch 10 or 12 feet wide from the edge of the road to the opposite bank, the bottom of which was between 3 and 4 feet below the surface of the road, and so soft that the car left tracks 8 inches deep, and that, after going up a bank 8 inches high, it stopped in a plowed field 29 steps from where it left the road, just in front of appellee's car. The credibility of the witnesses and the weight of their testimony were matters for the jury to determine. Whether appellant was negligent in

causing the collision or in failing to control or stop his car after the collision, and if so, whether such negligence was the proximate cause of the injury to decedent, were questions for the jury.

The court refused to give an instruction asked by appellant to the effect that, if he was without fault in the collision with Kelley's car, it was his duty after the collision to use ordinary care in the operation of his car thereafter, but that the mere fact that he permitted his car to go into the ditch was not of itself a showing of negligence, as, if it became apparent to him, acting as a careful and prudent man, that, to avoid obvious danger to the Luther car and the occupants thereof, or for the safety of himself and those with him, it was necessary or proper for him to put his car into and over the ditch, where he had no reason to believe the deceased was, then he had a right to so act or to permit his car to take said course, and, if he acted under all the circumstances as an ordinarily prudent and careful man, he would not be liable.

2. TRIAL: instructions: unsupported theories.

The thought of this requested instruction was fully covered by those given by the court, save in one particular. The charge of the court made no reference to any contention on the part of appellant that he put his car into the ditch, or permitted it to go there, to avoid collision with appellee's car, nor to what the situation would be if the jury so found. We think it was not error to refuse the requested instruction, for the reason that there was no evidence from which the jury could have found that appellant purposely went into the ditch to avoid collision with appellee's car. Appellant testified:

"After this collision, I did all I could to keep from going into the ditch, until I saw there was nothing else but to go into the ditch, and then I just went into the ditch."

Again, he said:

"From the time I was struck until I went into the ditch, I was trying to use the steering gear to control the car. There was no means of controlling or directing the car except the steering gear. I was not able to control the direction of the car by that after the collision."

And again:

"After the two cars came together, I kept trying to pull her into the road all of the time."

And on redirect examination he said:

"Between the Luther car and the north side of the road there must have been 23 to 24 feet through which I could have passed if I could have controlled the car. After the collision I was trying to keep my car in that space, to pass the Luther car."

In all other respects the instructions given by the court fully covered the matters referred to in the requested instruction. The jury was instructed, in substance, that, if it was not found that the collision was due to appellant's negligence, and it was found that his car was so injured in the collision that it was difficult to guide and control it, he would not be liable, unless it was found by a preponderance of the evidence that he failed to exercise reasonable care to control it; and that appellant could not be found guilty of negligence in failing to exercise due care to avoid injury to decedent, unless it should be found by a preponderance of the evidence that, after discovering decedent in the ditch, he failed to exercise due care to avoid injuring her, and that he could, after he so discovered her, have avoided injuring her by the exercise of ordinary care under all the circumstances.

No error being found in the record, the judgment is— *Affirmed.*

Arthur, C. J., Stevens and De Graff, JJ., concur.